USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALMA MONTES,

Plaintiff,

– against –

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

18cv1182 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

This is an appeal pursuant to 42 U.S.C. § 405(g) from a
denial by the Commissioner of Social Security of a claim for
Supplemental Security Income ("SSI"). The plaintiff, Alma
Montes, filed a claim for SSI alleging that she cannot work due
to her fibromyalgia, spinal pain, disc disease, hypertension,
diabetes, allergies, and depression. Her claim was initially
denied. After a hearing before an Administrative Law Judge
("ALJ"), the ALJ found that the plaintiff is not disabled within
the meaning of the Social Security Act.

The defendant filed a motion for judgment on the pleadings
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.
The plaintiff did not file an opposition to the defendant's
motion even after the Court extended the time to file an
opposition. The extended time to file an opposition has now
passed. In any event, the defendant's motion is well supported

and should be granted. Therefore, as discussed below, the defendant's motion is **granted**.

**I.**

The administrative record contains the following facts.

**A.**

On November 19, 2013, the plaintiff filed an application for SSI alleging disability. (R. 311.) The plaintiff's application was denied. (R. 154-61.) She requested a hearing[1] and the ALJ found that she was not disabled, (R. 35-46); the Appeals Council denied the plaintiff's request for review, (R. 1.)

At the time the plaintiff applied for SSI, she was a 44-year-old woman who claimed that she had been unable to work since June 2, 2005,[2] because of fibromyalgia, spinal pain, disc disease, hypertension, diabetes, and allergies. (R. 146.) In support of her application, the plaintiff submitted medical records from as early as 2002. Those records show that from 2002 to 2013, the plaintiff underwent various assessments and treatments for, among other things, depression, back pain, and fibromyalgia. (See, e.g., R. 595, 632, 635, 756, 766, 808,

---

[1]    At the August 16, 2016, hearing, the plaintiff's counsel advised the ALJ that the medical record was complete. (R. 102.)

[2]    On January 18 and August 8, 2016, the plaintiff appeared with counsel for a hearing before the ALJ. (R. 57-146.) At the hearing the plaintiff amended her alleged onset date to November 19, 2013. (R. 62.)

823.)  MRIs during this time also showed that she had disc bulges in her spine with thecal sac impingement.  (R. 606.)

In a November 19, 2013, function report, the plaintiff stated that she could take care of her personal needs, take her medication, and go places without reminders, (R. 349-52); prepare her own meals daily, (R. 350); use public transportation and shop, (R. 351); and pay bills and count change, (R. 351). The plaintiff reportedly socialized with her adult children and members of her church, which she attended three times per week. (R. 352-53.)[3]

After she filed her claim for SSI, the plaintiff was examined by multiple doctors.  On January 3, 2014, Dr. Alan Dubro (consultative examiner) indicated that the plaintiff's attention, concentration, and memory skills were impaired secondary to distractibility; however, her insight and judgement were good.  (R. 743-48.)  On January 3, 2014, Dr. Marilee Mescon (consultative examiner) opined that the plaintiff had no limitations on her ability to sit, stand, climb, push, pull or carry heavy objects. (R. 753.)  On January 23, 2014, Dr. T. Inman-Dundon (Disability Determination Services) opined that the plaintiff had moderate limitations with concentration, persistence, or pace, but no other limitations.  (R. 156.)  On

---

[3]    The plaintiff's medications during this time included Cyclobenzaprine, Quinapril, Benzonatate, Metformin, and Cymbalta.  (R. 355.)

April 11, 2013, Dr. Marshal Kurtz (examining source) opined that the plaintiff could sit, stand, or walk for one to three hours. (R. 651.) On April 11, 2013, Dr. Cindy Grubin (examining source) indicated that the plaintiff has fibromyalgia, herniated bulging discs in her neck and back, depression, and limitations in bending, stooping, pulling, carrying, and reaching. (R. 921-22.) On May 31, 2013, Dr. Ali Guy (treating source) opined that the plaintiff was "[t]emporarily unemployable" due to her fibromyalgia, spinal pain, and disc disease. (R. 546-47.) On November 19, 2015, Dr. Rachana Chowlera (examining source) assessed that the plaintiff had essential hypertension and fibromyalgia. (R. 1043.)

The ALJ determined that the plaintiff had the residual functional capacity ("RFC") to perform light work, except that the plaintiff required a sit/stand option, changing positions every forty minutes; could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; frequently finger and handle; occasionally interact with coworkers, supervisors, and the general public; and was limited to simple, routine, and repetitive tasks. (R. 40.) The ALJ determined that the plaintiff did not have the RFC to perform her past relevant work as a cashier. (R. 44-45.) However, based on the plaintiff's RFC and the testimony of a vocational expert, the ALJ found that the plaintiff could perform work as a mail clerk, office helper,

or electronics worker. (R. 45.) Because there were substantial jobs available in the national economy that the plaintiff could perform, the ALJ concluded that the plaintiff was not disabled. (R. 45-46.)

## II.

A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record. See 42 U.S.C. §§ 405(g), 1383(c)(3); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation marks omitted). The Commissioner's regulations provide a five-step inquiry to determine if a claimant is disabled.

At Step One, the Commissioner considers whether the claimant is engaged currently in substantial gainful activity. If not, the Commissioner proceeds to Step Two and considers whether the claimant has a severe impairment that limits the claimant's mental or physical ability to do basic work activities. If the claimant has a severe impairment, the Commissioner proceeds to Step Three, which requires determining, based solely on medical evidence, whether the claimant has an impairment listed in Appendix 1 of the regulations. If so, the

5

Commissioner shall consider the claimant disabled without considering the vocational factors of age, education, and work experience. If the impairment is not listed in the regulations but is determined to be a severe impairment, Step Four requires the Commissioner to determine the claimant's RFC and, based on that determination, ask whether, despite the claimant's severe impairment, the claimant can perform the claimant's past work. Finally, if the claimant is unable to perform such past work, at Step Five the Commissioner determines whether there is other work that the claimant could perform. 20 C.F.R. §§ 404.1520(a), 416.920(a); see Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). The claimant bears the burden of proof through the first four steps; the burden shifts to the Commissioner at the fifth step. Shaw, 221 F.3d at 132.

When an ALJ is deciding whether the claimant is disabled, the ALJ must adhere to the "treating source rule," which requires the ALJ to consider the opinion of the claimant's treating doctors.[4] 20 C.F.R. § 416.927(c)(2); see Shaw, 221 F.3d

---

[4]    The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017. See 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources . . . . [W]e will consider those medical opinions . . . together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."). The plaintiff filed her claim before March 27, 2017. Thus, the treating physician rule under the previously existing regulations applies. See Tanya L. v. Comm'r of Soc. Sec., No. 17cv136, 2018 WL 2684106, at *4 n.1 (D. Vt. June 5, 2018) ("Because

6

at 134. Traditionally, but not always, an ALJ must accord great weight to such opinions. See Shaw, 221 F.3d at 134. An ALJ must accord controlling weight to a treating source's opinion when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with substantial evidence of record. 20 C.F.R. § 404.1527(c)(2). If an ALJ gives opinions of a treating doctor less than controlling weight, the ALJ must specify "good reasons." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(d)(2). Failure to provide "good reasons" for discrediting the opinion of a plaintiff's treating doctor or failure to justify giving less than controlling weight with reference to the Social Security regulations is a ground for remand. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

## III.

In this case, the ALJ carefully followed the five-step sequential process and concluded that the plaintiff was not disabled. That conclusion was supported by substantial evidence and was not infected by legal error.

---

Plaintiff filed her claims before March 2017, however, the Court applies the treating physician rule under the earlier regulations (20 C.F.R. § 416.927), and not under the more recent ones (20 C.F.R. § 416.920c).").

## A.

At Step One, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since November 19, 2013, the application date. At Step Two, the ALJ found that the plaintiff had the following severe impairments: depression, diabetes, and lumbar disc bulges.

## B.

Substantial evidence in the record supports the ALJ's conclusion that the plaintiff's impairments, both singly and in combination, did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, of 20 C.F.R. Part 404. (R. 38-39.) The ALJ specifically considered listings 1.04 (disorders of the spine), 9.00(B)(5) (diabetes mellitus and other pancreatic disorders), and 12.04 (affective disorders). (R. 38-39.) The evidence in the record supports the ALJ's finding that the plaintiff's disabilities do not qualify for any of these listings.

## C.

At Step Four, the ALJ determined that the plaintiff had the RFC to perform light work, except that the plaintiff required a sit/stand option, changing positions every forty minutes; could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; frequently finger and handle; occasionally interact with coworkers, supervisors, and the general public; and was limited

to simple, routine, and repetitive tasks. Based on this RFC and the testimony of a vocational expert, the ALJ found, at Step Five, that the plaintiff could work as a mail clerk, office helper, and electronics worker, and that there were substantial jobs in the national economy in those occupations that were available. The ALJ's determinations are supported by substantial evidence.

1.

Although there is some opinion evidence in the record that the plaintiff did not have the physical ability to work, the ALJ properly assigned little or no weight to those opinions. Particularly, two of the plaintiff's doctors -- Vijaya Reddi and M. Alba -- opined that the plaintiff's disabilities would not allow her to work. (R. 545, 822.) However, those opinions were based on assessments made over five years prior to the plaintiff's SSI application. See Kaminski v. Astrue, No. 09cv655, 2012 WL 887468, at *9 (N.D.N.Y. Feb. 21, 2012) (holding that the ALJ's decision to disregard a treating doctor's opinion was supported in part because the doctor's assessment predated the application for benefits by several years), report and recommendation adopted sub nom. Kaminski v. Comm'r of Soc. Sec., No. 09cv655, 2012 WL 887062 (N.D.N.Y. Mar. 15, 2012). The ALJ carefully reviewed all of the numerous medical source statements with respect to the plaintiff's physical limitations. The ALJ

discounted some medical opinions which were not sufficiently favorable to the plaintiff because they failed to acknowledge some limitations on the plaintiff that the ALJ found.  For example, while Dr. Mescon and Dr. Chowlera found no functional limitations of the plaintiff, the ALJ gave little weight or partial weight because the ALJ found greater limitations. (R. 43.)  In short, the ALJ carefully assessed the evidence and there was substantial medical evidence to support the limited restrictions that the ALJ found on the plaintiff's RFC.

## 2.

With respect to the plaintiff's mental functioning, the plaintiff's doctors stated that the plaintiff had moderate limitations with regard to:  following rules, accepting supervision, dealing with the public, maintaining attention, relating with others, adapting to change, and dealing with stress, (R. 759 (John Spiegel)); moderate limitations with concentration, persistence or pace, but no other limitations (R. 156 (Dr. Inman-Dundon)); moderately impaired abilities to attend to, remember, and follow directions, maintain attention and concentration, learn new tasks, independently perform tasks, perform complex tasks, interact with others, and make day-to-day decisions, (R. 747-48 (Dr. Dubro)); and markedly limited in her ability to regularly attend to a routine and maintain a schedule, (R. 748 (Dr. Dubro)).

The ALJ properly assessed various weights to these opinions. He assigned little weight to Mr. Spiegel's opinion because Mr. Spiegel's credentials were not provided and Mr. Spiegel's opinion was "not consistent with the correlating examination": Mr. Spiegel noted that the claimant had mild depressive symptom yet assessed a severe GAF score and specified moderate functional limitations. (R. 42-43, 756.) The ALJ gave some weight to the opinion of Dr. Inman-Dundon, but the ALJ noted that the ALJ found greater limitations. (R. 44, 156-59.) The ALJ gave partial weight to Dr. Dubro's opinion but found that the alleged marked difficulties in following a schedule was undermined by the fact that the plaintiff regularly attended medical appointments, socialized at church three times per week, and attended the disability hearing even though she did not feel like it. (R. 80-81, 90-91.)

In short, the ALJ carefully reviewed the medical evidence and explained the weight that he gave the opinions of the various sources and the reasons. The ALJ's conclusions were supported by substantial evidence and consistent with the treating source rule.

*         *         *

The ALJ properly considered and weighed the totality of the evidence in assessing the plaintiff's RFC, and that assessment is supported by substantial evidence. See Matta v. Astrue, 508

F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

## CONCLUSION

The ALJ's decision that the plaintiff was not disabled is supported by substantial evidence in the record and there was no legal error. Therefore, the defendant's motion for judgment on the pleadings is **granted.**

The Clerk of Court is directed to enter judgment dismissing this case. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           March 18, 2019

                              _____
                                    John G. Koeltl
                              United States District Judge